<u>**NOT FOR PUBLICATION**</u>                                                                 **[25, 34]**


## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

———————————————————————
|                                                            :
TRANSCONTINENTAL INSURANCE        :
COMPANY,                                          :          Case No. 06-cv-03358 (FLW)
|                                                            :
      Plaintiff,                             :                    **OPINION**
            v.                            :
|                                                            :
JOCAMA CONSTRUCTION              :
CORPORATION and AMHERST MEWS        :
HOMEOWNERS ASSOCIATION, INC.,        :
|                                                            :
      Defendants.                       :
———————————————————————:


<u>**WOLFSON, United States District Judge**</u>

       Presently before the Court is Defendant's Motion to Dismiss, or, Alternatively to Stay

Proceedings of Plaintiff's Complaint for Declaratory Relief.  In the Complaint, Plaintiff,

Transcontinental Insurance Company ("Transcontinental"),  requests a judicial determination that

it has no obligations to continue to defend and indemnify Defendant, Jocama Construction

Corporation ("Jocama"), in an underlying, pending state court case, <u>Amherst Mews Homeowners</u>

<u>Association, Inc. v. The Hills Development Co., et al.</u>, Docket No. SOM-L-1731-03, New Jersey

Superior Court, Law Division, Somerset Country, filed on October 20, 2003 ("Amherst

Litigation").  In addition, Transcontinental seeks reimbursement, plus interest, in the defense and

indemnity of Jocama as well as an allocation between the uncovered and covered claims,

1

damages, fees, expenses, costs of sums for the defense or any indemnity.  Complaint, filed July 25, 2006, ("Complaint") at 2.   The Court has jurisdiction pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.  For the following reasons, the Court finds that Plaintiff's Complaint against Defendant shall be stayed, and the case will be administratively terminated, with the right to re-open upon the resolution of the Amherst Litigation.

**I. BACKGROUND**

Transcontinental is seeking a declaration that it is not obligated to provide a defense or indemnification to Jocama, in connection with the Amherst Litigation.  Complaint at 2.  In that state case, Amherst Mews Homeowners Association, Inc. ("Amherst Mews ") asserts numerous claims against various parties arising out of construction of the Amherst Mews townhouse development and seeks compensatory, punitive and consequential damages, in addition to interest, attorney's fees and costs, for damages allegedly sustained by the townhome units as a result of the defective workmanship of those parties, including Jocama, which performed masonry work at the project.  Transcontinental has provided and continues to provide a defense to Jocama in the Amherst Litigation.  Complaint at 4.

The Amherst Litigation is a complex and evolving matter.  It has been pending in New Jersey State Court since 2003, and there is no scheduled trial date.  Moreover, fact and expert discovery are incomplete.  Declaration of John J. Tambascia, Jr, dated January 12, 2007, ("Tambascia Decl.") at 3.  Due to the extensive and complicated nature of the underlying case, a special discovery master, retired Judge Alvin Weiss, has presided over discovery since December 2005.  Amherst Litigation Order Appointing Special Discovery Master, dated December 22, 2005. As of earlier this year, the parties projected conducting over sixty depositions, including those of

approximately seventeen expert witnesses.  Tambascia Decl. at 3.  Paper discovery has required the creation of four document repositories, each containing anywhere from 50,000 to 15 million pages.  Id.  Furthermore, due to Amherst Mew's alleged concealment of a year's worth of documents, repairs, and fund recovery from collateral sources, the twenty-two completed depositions as of January 12, 2007 may require replication.  Id. at 4.

Transcontinental asserts that the Amherst Litigation falls within the exclusionary provisions of its insurance contract.  Complaint at 4-5.  Furthermore, Transcontinental claims that the coverage issues can be resolved without the adjudication of Jocama's liability in the underlying action.  Plaintiff's Opposition Brief, dated March 19, 2007, ("Pl. Opp. Br.") at 8.  Jocama alleges that the underlying factual determinations in the Amherst Mews Litigation relate to the same circumstances and allegations as in the instant federal matter.  Defendant's Memorandum of Law in Support of its Motion to Dismiss ("Def. Memo."), dated February 15, 2007, at 1.  According to Jocama, in order to properly proceed with discovery requests in this matter, Plaintiff would need to duplicate completed and pending discovery in the underlying action, leading to an inefficient depletion of resources.  Id.  In addition,  Jocama maintains it would be severely prejudiced in the Amherst Litigation if the current action proceeds.  Specifically, Jocama fears its adversary in the underlying litigation may seek to employ discovery regarding the assertions of the parties in this case and use Transcontinental's allegations and disclosures against Jocama in the Amherst Litigation.  Def. Memo. at 9.  Further, Jocama contends that its insurer, Transcontinental, creates a conflict of interest by allowing this litigation to proceed simultaneously.  Id.  Conversely, Transcontinental contends that it will be prejudiced if this action is dismissed or stayed.  Pl. Opp. Br. at 11.  In particular, Transcontinental believes the dismissal or staying of the instant action

would result in prejudice because it will continue to accrue defense costs and deprive it of a determination as to its coverage obligations.  Id.

## II. DISCUSSION

The Declaratory Judgment Act confers upon the Court discretion rather than an absolute right upon the litigant.  Wilton v. Seven Falls Co., 515 U.S. 277, 287 (1995).  When the district court, in the exercise of its judgment deems no useful purpose in the declaratory action, "it cannot be incumbent upon that court to proceed to the merits before staying or dismissing the action." Id. at 288.  In an effort to guide the discretionary decision, the Third Circuit has identified the considerations to be weighed in determining the appropriateness of a declaratory judgment involving insurance coverage issues:

> 1) a general policy of restraint when the same issues are pending in a state court; 2) an inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion; and 3) avoidance of duplicative litigation.

State Auto Ins. Companies v. Summy, 234 F.3d 131, 134 (3d. Cir. 2000) (citing United States v. Commonwealth of Pa., 923 F.2d. 1071, 1075-76 (3d Cir. 1991)).

However, the discretion of the court in exercising jurisdiction over a declaratory judgment action pending in a state court proceeding is not unbounded.  Walker v. Rose, 22 F.Supp.2d 343, 346 (D.N.J. 1998) (citing Commonwealth of Pa., 923 F.2d. at 1073).  Afforded the proper regard, \ the Third Circuit's guidelines, as set forth in Summy, are a sufficient safeguard against the risk of limitless discretion in matters of declaratory judgment, while appreciating the unique nature of insurance coverage.

### A.  Policy of restraint when the same issues are pending on a state court

The first consideration mandates a general policy of restraint when the same issues are pending in state court.  Summy,  234 F.3d at 134.  To assess the applicability of this policy here, an examination of the issues in the Amherst Litigation is appropriate.  The issues in determining an insurance company's duty to defend are "not limited to the facts and allegations contained within the four corners of the underlying complaint; rather facts outside the complaint may trigger the duty."  Alexander v. Nat'l Fire Ins., 454 F.3d 214, 220 (3d Cir. 2006) (citing SL Indus., Inc. v. Am. Motorists Ins. Co., 128, N.J. 188 (N.J. 1992).  Though the underlying claims in the Alexander case had already been settled, the Third Circuit's guidance on how to liberally construe the issues for coverage purposes is instructive.  Id. at 220.

Thus, the Court here is not limited to the wording of the underlying complaint in making coverage determinations.  Transcontinental argues that whether Jocama in fact performed its work on the project in a faulty manner and/or  used defective materials is distinct from the issue of coverage.  Pl. Opp. Br. at 6.  However, as noted, Alexander mandates the consideration of the nature of the claims and evidence presented in the underlying litigation in determining whether the insurer owes a duty to the insured in an underlying litigation.  Alexander 454 F.3d at 220.  Hence, limiting the determination to solely the claims set forth in the Complaint is inappropriate.

Overlooking Alexander and citing a variety of reasons, Transcontinental claims that a determination as to its coverage obligation is appropriate at this time.  First, Transcontinental maintains this view because the underlying litigation allegedly did not arise out of an "occurrence" or "accident" as those are determined by the insurance contracts.  Pl. Opp. Br. at 10.  Next, it denies coverage based on actions or omissions on the part of Jocama that are entirely independent

of Jocama's work on Amherst Mews, including that Jocama: "1) breached the cooperation

provisions in the Transcontinental contracts; 2) took and/or failed to take certain actions which

have prejudiced Transcontinental; and 3) may have breached conditions precedent to coverage."

Id.   Transcontinental further contends that the insurance contract's language bars coverage for

property damage:

> 1) that is related to the injured's product and/or work; 2) that is
> relative to property on which an insured or any contractors or
> subcontractors working directly or indirectly on its behalf are
> performing operations; 3) that must be restored, repaired or replaced
> because the insured's work was incorrectly performed on it; 4) to
> impaired property or property that has not been physically injured,
> arising out of a defect, deficiency, inadequacy or dangerous condition
> in the insured's product or the insured's work, or a delay or failure by
> the insured or anyone acting on behalf of the insured to perform a
> contract or agreement in accordance with its terms.

Id.

Lastly, Transcontinental also seeks to establish that it has "no duty to defend or

indemnify Jocama in the underlying action to the extent that Jocama has other insurance, self

insurance, retention, deductibles, rights of contribution, rights of indemnification, any other

sources of potential reimbursement for losses allegedly covered by the insurance contracts."  Id.

Yet, given the extensive and complicated character of the discovery in the still developing

Amherst Litigation, all the aforementioned exclusions and reasons set forth by Transcontinental

may not be assessed at this time.  First, even excluding any possible replication of already

completed discovery, there remains great potential that the scope of Transcontinental's coverage

will change upon completion of over sixty depositions, including as many as those of seventeen

experts.  Second, as to whether the underlying case arises out of an "occurrence" or "accident" is

subject to the factual determinations as to Jocama's conduct and whether they fall under the purview of these contract terms.  Third, with regard to acts, omissions, and property damage determinations, once again, the Court cannot assess whether Jocama committed or omitted certain acts until factual discovery is complete in the underlying State matter.  For example, although the insurance contracts bar coverage for property that was not impaired as a result of Jocama's work, the Court cannot definitively relieve Transcontinental of its obligation at this stage, because property damage may have arisen from a scenario not precluded by the insurance contracts – namely, Jocama's alleged actions may have caused damage to property other than to Jocama's work specifically. Defendant's Memorandum of Law in Further Support of Motion to Dismiss, dated March 26, 2007, ("Def's Reply") at 8.  Therefore, Transcontinental's coverage obligation may be triggered at any time point in this developing litigation, and as a result, the Amherst Litigation's issues are not necessarily distinct from those currently before the State court. Accordingly, these factors favor a policy of restraint.

### B. Avoiding an inherent conflict of interest

The second Summy consideration requires the appraisal of the inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion.  Summy, 234 F.3d at 134.  In the instant case, Transcontinental argues that there is no conflict with the present action because it would not need to prove that Jocama's work was faulty or that it caused harm to Amherst Mews in order to show that there is no coverage.  Pl. Opp. Br. at 8.  However, as indicated, the nature of the underlying action is what matters. Alexander 454 F.3d at 220.  The issue of relevancy, particularly with regard to policy exclusions, is contingent on the resolution of the Amherst Litigation.  The

Court cannot assess the exclusionary aspects of coverage until the full factual story is set forth by

the underlying litigation.  Only then can, and will, the Court decide the merits of the coverage

issues.  As such, discharging concerns of a conflict of interest is premature and risky at this

juncture, especially given Transcontinental's position as the insured.  Further, it is especially

problematic that Transcontinental has been defending Jocama for over three years, since the

inception of the Amherst Litigation.  Complaint at 4.  For Transcontinental to provide a defense in

the underlying litigation while at the same time trying to prove that Jocama's actions or omissions

fall outside the coverage provisions is prejudicial to Jocama.  Had Transcontinental brought this

action at the start of the Amherst Litigation, the inherent conflict of interest may have been

mitigated to the point of irrelevancy.  However, "but for" hypotheticals are not of concern here and

as such, the second consideration is satisfactorily met.

### C.  An avoidance of duplicative legislation

Lastly, the Court must favor the avoidance of duplicative litigation.  <u>Summy</u>, 234 F.3d at

134.  To assess whether a litigation would be redundant, the Court must consider the issues

litigated.  As discussed above, those issues are determined by the broader nature of the claims and

are still evolving.  Hence, there is a risk of a duplicative litigation if the Amherst Litigation issues,

upon completion of discovery, evolve into those at play here.  Given the extensive and complicated

character of the discovery, and the still developing character of the Amherst Litigation, there is

likely to be a duplication of litigation, particularly in the way of discovery, even if the specific

claims are not immediately identical.  Discovery in the underlying litigation, as evidenced by the

appointment of the Discovery Master and the creation of document repositories, for example, is

expansive.  Hence, the preference for avoiding duplicative legislation is especially compelling in

this matter.

**D.  Exercise of Discretion**

Transcontinental cites <u>Walker</u> as support for the proposition that the abstention of exercising jurisdiction is inappropriate because the state action does not involve the same issues or parties.  Pl. Opp. Br. at 6.  However, <u>Walker</u> did not involve the special circumstances surrounding insurance coverage and hinged on the exclusive jurisdiction of the court over ERISA claims. <u>Walker</u>, 22 F.Supp.2d at 346.  <u>Summy</u>, on other hand, acknowledges the special relationship of the insurer and the insured: "there is an inherent conflict of interest between an insurer's duty to defend in state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion." <u>Summy</u>, 234 F.3d at 134.  Additionally, the Amherst Litigation involves purely matters of state law, so there is not a similar exigency as in <u>Walker</u>, which required a ruling on matters of exclusive federal jurisdiction.  While the Court appreciates Transcontinental's concern for a limitless discretion regarding declaratory judgments, it cannot adopt its proposition that  <u>Walker</u> mandates leaning toward allowing such actions to proceed.  Pl. Opp. Br. at 5.  Contrary to the misinformed suggestion by Transcontinental for the Court's wholesale favoring of the declaratory judgment, the preferable course of action is a stay when the basis for declining to proceed is the pendency of a state proceeding, since it assures the federal action can proceed without risk of a time bar.  Wilton, 515 U.S. at 287.

In addition, the Court disagrees with Transcontinental's arguments regarding ripeness and prejudice.  Transcontinental narrowly cites <u>Traveler's Indemnity Co. V. Dammann & Co., Inc.</u> for the proposition that "an actual controversy exists once the events underlying the insured's liability have occurred . . . A party need not wait until an underlying suit has been filed before it seeks

9

declaratory relief."  Pl. Opp. Br. at 12 (citing Traveler's Indemnity Co. V. Dammann & Co., Inc. , No. 04-5699, 2005 WL 3406374, at *1 (D. N.J. Dec. 12, 2005)).  However, Traveler's is distinguishable from the instant case, as the insurance company in that case commenced the declaratory action upon discovering a formal claim was filed against it.  Id. at 2.  To the contrary, here, Transcontinental did not file its claim once discovering a potential claim existed.  Rather, Transcontinental waited over three years before waiting to formally exonerate itself of its indemnification obligation.  Further, Traveler's even admits that the controversy question is one of degree and there is no precise test.  Id. at *2 (citing Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941)).  Given the evolving nature of the underlying case, the discovery findings will determine the full scope of the allegations, which is what is relevant per Alexander.  Alexander 454 F.3d at 220.

Moreover, Transcontinental may continue to defend Jocama under reservation of right without undue prejudice to itself.  Transcontinental claims prejudice will result to itself since it would continue incurring defense costs in the underlying state action.  Pl. Opp. Br. at 11. However, upon completion of the underlying litigation, Transcontinental, if appropriate, may recommence this action to recoup its defense expenses from Jocama.  Since the stay eliminates the risk of a time bar of a federal action,  Wilton, 515 U.S. at 287, the Court finds unconvincing Transcontinental's prejudice concerns.

## III. CONCLUSION

For the foregoing reasons, Defendant's Alternative Motion to Stay Proceedings of Plaintiff's Complaint for Declaratory Relief is granted.

10

/s/ Freda L. Wolfson
Honorable Freda L. Wolfson
United State District Judge

Date: July 26, 2007